IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

ROBERT L. LAWSON )
)
v. ) No. 2:09-0098
) Judge Wiseman/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for supplemental security income ("SSI") benefits, as provided under Title XVI of the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 20). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 12),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff protectively filed his SSI application on June 21, 2006, alleging

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

disability onset as of October 22, 2003. (Tr. 91-94) After initial and reconsidered denials of this application by the state agency, plaintiff requested and received a de novo hearing before an Administrative Law Judge ("ALJ"). The hearing was conducted via videoconference on January 24, 2008. (Tr. 10-43) Plaintiff was represented by counsel and gave testimony, as did an impartial vocational expert. At the hearing, plaintiff amended his alleged onset date to February 15, 2006, due to his performance of work as a truck driver from July 2005 through February 2006. (Tr. 14-15, 65) At the conclusion of the hearing, the ALJ closed the record and took the case under advisement.

On February 15, 2008, the ALJ issued his written decision denying plaintiff's claim to benefits. (Tr. 65-72) This decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since June 21, 2006, the amended alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: non-insulin dependent diabetes, chronic obstructive pulmonary disease, obstructive sleep apnea, hypertension, and morbid obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that he must have the option to alternate between sitting and standing. He must work in a controlled environment with no excessive dust, fumes, or gases and he cannot be exposed to unprotected heights, climbing, or crawling. The claimant can only occasionally perform pushing or pulling of arm and leg controls.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on June 12, 1966 and was 40 years old, which is

> defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 21, 2006, the date the application was filed (20 CFR 416.920(g)).

(Tr. 67, 69-72)

On September 4, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-4), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Plaintiff's severe obstructive sleep apnea is documented by several sleep studies (Tr. 158-61, 172-73, 169-70), with use of a BiPAP (bilevel positive airway pressure) device, supplemental nighttime oxygen, and weight loss prescribed as remedies. (Id.; Tr.

3

176-79) Standing roughly 70 inches tall and weighing roughly 340 pounds during the relevant period, plaintiff's severe or morbid obesity is well documented in the record. Also well documented is plaintiff's non-insulin dependent diabetes, which he has struggled to control secondary to failing to adhere to an appropriate diet and medication regime, as well as medical advice regarding weight loss and smoking cessation.

Plaintiff is a long-term cigarette smoker. He had continued his habit of smoking at least one pack per day during the relevant period (e.g., Tr. 201, 222), though he testified at his hearing that he had cut down to a half pack per day. (Tr. 20) Plaintiff suffers from chronic obstructive pulmonary disease ("COPD"), for which he has been prescribed breathing treatments and continuous advice to cease smoking. His lung examinations have been variously clear of wheezing, rhonchi, and rales (Tr. 216, 219, 252), and positive for such symptoms (Tr. 202, 221).

On September 13, 2006, plaintiff was sent for a consultative examination by Dr. Melvin Blevins at government expense. (Tr. 201-03) Dr. Blevins noted plaintiff's medical conditions and subjective "[c]omplaints of shortness of breath with and without activity, very short of breath with minimal activity. He also states he falls asleep easily if he sits still. He does smoke one to one-and-a-half packs per day for the past 24 years." (Tr. 201) The following results were given upon examination of plaintiff's lungs: "Show markedly decreased breath sounds that are harsh with scattered rhonchi, basal rales, and expiratory wheezing. He has short neck physiognomy consistent with sleep apnea." (Tr. 202) Dr. Blevins ordered a pulmonary function test; diagnosed COPD, morbid obesity, sleep apnea, and type II diabetes mellitus; and, reported that a functional assessment was not possible based on the limited physical examination. (Tr. 202-03) Pulmonary function testing

4

revealed FEV1 scores indicative of borderline obstruction and mild restriction. (Tr. 204)

On September 25, 2006, plaintiff's medical file was reviewed by Dr. Robert T. Doster, M.D., in conjunction with the initial agency determination of plaintiff's claim to benefits. (Tr. 58, 207-14) Dr. Doster opined that plaintiff could occasionally lift/carry up to 50 pounds, frequently lift/carry up to 25 pounds, stand/walk and sit about 6 out of 8 hours, and push/pull without limitation. (Tr. 208) He further opined that plaintiff should avoid all exposure to workplace hazards such as machinery and heights because of his obstructive sleep apnea with daytime hypersomnia. (Tr. 211) Dr. Doster commented on plaintiff's elevated blood sugars with medication noncompliance, and noted Dr. Blevins' findings regarding plaintiff's lungs, but deemed plaintiff's pulmonary dysfunction to be nonsevere based on the results of the pulmonary function tests ordered by Dr. Blevins. (Tr. 214)

On February 25, 2007, plaintiff's medical file was reviewed by Dr. Frank R. Pennington, M.D., in conjunction with the reconsidered agency determination of plaintiff's claim to benefits. (Tr. 60, 232-39) Dr. Pennington opined that plaintiff was limited to occasionally lifting/carrying no more than 20 pounds, frequently lifting/carrying no more than 10 pounds, standing/walking and sitting about 6 out of 8 hours, and pushing/pulling without limitation. (Tr. 233) He also opined that plaintiff should never climb ladders, ropes, or scaffolds, and could only occasionally perform other postural maneuvers such as stooping, crouching, crawling, etc. (Tr. 234) Dr. Pennington further opined that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., as well as to workplace hazards. (Tr. 236) Dr. Pennington commented that plaintiff was limited by his combination of impairments, including the fatigue produced by his obesity, sleep apnea, and diabetes. (Tr. 239)

At a visit to the state health department in January 2007, plaintiff was noted to display rhonchi and occasional wheezing with no rales, and his diagnoses included uncontrolled diabetes, COPD with smoking more than 20 years, hypertension, and morbid obesity. (Tr. 243) In November 2007, plaintiff was seen again at the health department with an abscessed tooth, and for dispensation of a nebulizer and solutions to treat his shortness of breath. He also complained of significant daytime sleepiness while not utilizing his sleep apnea machine, nor keeping a daily log of his blood sugar. He was diagnosed with poorly controlled diabetes mellitus, morbid obesity, tobacco use, pulpitis related to the tooth abscess, obstructive sleep apnea (non-compliant with treatment), and COPD. (Tr. 254) At another health department visit on January 22, 2008, two days prior to his ALJ hearing, plaintiff was diagnosed for the first time with depression and given a referral to a mental health care facility.

At the January 24, 2008 hearing before the ALJ, plaintiff testified that he was 41 years old, with formal education through the ninth grade and subsequent attainment of his GED. (Tr. 16) He lived with his fiancee and his brother, who is disabled, and helped with the household chores. (Tr. 17-18) He testified that he was trying to quit smoking, and had cut back to half a pack of cigarettes per day. (Tr. 20) He weighed 348 pounds at the time of the hearing, and was not on a diabetic diet, though he tried to watch what he ate. (Tr. 21) He was taking three blood sugar medications, one triglyceride medication, and one cholesterol medication. Id. His hobbies included fishing, though he did not do a lot of it anymore. (Tr. 22) He testified that he could not walk the length of a hallway without getting out of breath and needing to rest. (Tr. 26) He would need to stop and rest during a walk the length of a city block. (Tr. 27) He testified that he could shop at a shopping center

6

for a couple of hours as long as he did not have to walk continuously, but could stop and rest along the way. (Tr. 28-29) He stated that he could not stay awake for eight consecutive hours during the day. (Tr. 29-30) He testified that his BiPAP machine helped his daytime fatigue, but seemed to itself obstruct his breathing during the night, so he no longer used the machine. (Tr. 30) He was trying to get that problem corrected, but had been unable to get another sleep study scheduled because he had lost his TennCare. (Tr. 31) He has gotten drowsy to the point of falling asleep while cooking, fishing, driving, and watching a movie on television. (Tr. 33) Plaintiff further testified to less significant health problems, including arthritis and an issue with his hip. (Tr. 33-34) Finally, he testified to recent symptoms of depression. (Tr. 35-36)

In response to the ALJ's questioning, the vocational expert identified plaintiff's past relevant work and testified that the hypothetical limitations posed by the ALJ would not allow for a return to such work. (Tr. 37-39) The expert was able to identify other light and sedentary jobs that were available in the economy and that would accommodate the hypothetical restrictions (Tr. 39-40), except when those restrictions included the inability, on more than seldom occasions, to stay awake and alert for an eight-hour shift that included work breaks. (Tr. 40) Such an inability would preclude all work. Id.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d

124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

8

> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483,

9

490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ's decision is subject to reversal on two grounds: (1) that his credibility determination is not supported by substantial evidence, and (2) that he committed legal error in failing to properly consider plaintiff's obesity pursuant to Social Security Ruling ("SSR") 02-1p. For the reasons that follow, the undersigned finds no support for either argument.

Regarding the credibility of plaintiff's subjective complaints of disabling symptoms, the ALJ properly followed the rubric established in, e.g., 20 C.F.R. § 416.929, as fully set out in his decision. (Tr. 69-70) That regulation requires the ALJ, upon finding "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms," to then evaluate the intensity and persistence of those symptoms by reference to the record as a whole, including both the objective medical evidence and other evidence bearing on the severity of the claimant's functional limitations. 20 C.F.R. § 416.929(c)(1)-(3). There is no question that a claimant's subjective complaints can support a finding of disability -- irrespective of the credibility of that claimant's statements before the agency -- if they are grounded in an objectively established, underlying medical condition and are borne out by the medical and other evidence of record. Id.; see, e.g., Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); SSR 96-7p, 1996 WL 374186, at *1, 5 (describing the scope of the analysis as including "the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and

10

how they affect the individual, and any other relevant evidence in the case record[;]" "a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled."). Such "other evidence" which the ALJ is bound to consider includes evidence of the following factors:

    (i) Your daily activities;

    (ii) The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi) Any measures you use of have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

It is well established that an ALJ may properly consider the credibility of a claimant in conjunction with his consideration of the medical and other evidence described above, and that this credibility finding is due great weight and deference in light of the ALJ's opportunity to observe the claimant's demeanor while testifying. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). In considering the ALJ's finding on the weight of plaintiff's subjective complaints, this court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record." Id.

Here, the ALJ analyzed the credibility of plaintiff's subjective complaints of fatigue against the medical and other evidence of record, as part of his analysis of plaintiff's "overall credibility" as a disability claimant. (Tr. 70) He found plaintiff's overall credibility "quite suspect," largely on the strength of plaintiff's failure, without good reason, to follow prescribed treatment for his diabetes, obesity, and COPD, as well as his continuing to smoke cigarettes.[2] Id. In so doing, the ALJ did not conflate the issues of credibility and failure to follow prescribed treatment and medical advice, as plaintiff argues, but merely (and quite properly) found the latter relevant to the former. E.g., SSR 96-7p, 1996 WL 374186, at *7 ("[A]n individual's attempts to seek medical treatment ... and to follow that treatment once it is prescribed [are relevant] ... for the purposes of judging the credibility of the individual's statements."). Nonetheless, the ALJ deemed plaintiff's subjective complaints partially credible -- even more credible than the physician file-reviewers who authored the only functional assessments of record -- and found him capable of a limited range of light work under the following rationale:

> This residual functional capacity is consistent with the evidence of record and the claimant's hearing presentation. The claimant has required only conservative treatment for diabetes, chronic obstructive pulmonary disease, and sleep apnea. He has been treated with prescribed medications and a CPAP

---

[2]Plaintiff states that his difficulties in maintaining compliance with prescribed medical treatment, including foregoing his BiPAP treatment until he can procure a device that does not make him feel smothered, were born of financial difficulties and his loss of TennCare insurance. (Tr. 30-31, 178, 217, 226) However, the ALJ found this explanation "tempered by his repeated admissions throughout the record of heavy tobacco use, which he also does against medical advice" (Tr. 70). Cf., e.g., McDonald v. Astrue, 2009 WL 559932, at *7 (E.D. Tenn. Mar. 5, 2009) ("Plaintiff claims to be unable to afford adequate medical care yet can afford up to one and one-half packs of cigarettes per day. This style of life is completely inconsistent with the limitations alleged.") (citing Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 480 (6th Cir. 1988)).

12

> machine. He has not been hospitalized or referred to specialists. His clinical exams revealed no significant pulmonary distress or signs of diabetic neuropathy or end organ disease. Similarly, they have revealed no musculoskeletal or neurological abnormalities. His blood sugars have been poorly controlled, but this has been mainly due to his non-compliance with prescribed medication and diet, described below. None of his treating or examining physicians assigned any limitations to his ability to function and none opined that he was disabled. The only functional assessments of the claimant in the record are those of the state agency physicians. Said assessments are accommodated by the residual functional capacity outlined above. Additionally, to further accommodate the claimant's subjective complaints of fatigue and shortness of breath, the undersigned added a sit/stand option and pushing and pulling limitations to said residual functional capacity.

Id. Thus, plaintiff's argument that the ALJ improperly limited his credibility analysis to consideration of plaintiff's compliance with prescribed treatment is clearly misplaced. The ALJ properly considered all relevant evidence in arriving at his credibility and RFC findings, and those findings are supported by substantial evidence.

Plaintiff next argues that the ALJ did not properly consider his obesity as required by SSR 02-1p, particularly as the obesity combines with his sleep apnea to cause fatigue. However, the ALJ expressly found plaintiff's morbid obesity to be a severe impairment (Tr. 67), expressly observed the SSR's requirement "that an assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" (Tr. 70), and largely adopted the assessment of a physician file-reviewer who accounted for plaintiff's "[f]atigue from obesity," (Tr. 239) except that the ALJ also assigned additional work restrictions "to further accommodate the claimant's subjective complaints of fatigue and shortness of breath[.]" (Tr. 70) The requirements of SSR 02-1p were clearly met here.

In sum, the decision of the ALJ is amply supported by the evidence of record, and is thus deserving of affirmance.

### IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 4th day of February, 2011.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE